

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER LEFORT,

    Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

    Defendant.

18-CV-00510-MJR
DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 14)

Plaintiff Christopher Lefort ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 9) is denied, and defendant's motion (Dkt. No. 12) is granted.

## BACKGROUND

Plaintiff filed applications for DIB and SSI in July of 2014 alleging disability since June 10, 2010, due to diabetes, back problems, venous insufficiency, and low

---

[1] The Clerk of Court is directed to amend the caption accordingly.

testosterone. (See Tr. 103-110, 178-90)[2] Plaintiff's disability benefits application was denied at the initial level, and plaintiff then requested review of the determination by an Administrative Law Judge ("ALJ"). (Tr. 111-12) On April 3, 2017, plaintiff appeared with his attorney for a telephonic hearing in Jamestown, New York, before ALJ Lynnette Gohr. (Tr. 26-70) A vocational expert also testified. (Id.)

On May 18, 2017, the ALJ issued a partially favorable decision finding that plaintiff was not disabled prior to January, 2017, but disabled thereafter. (Tr. 14-21) Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 1-6) Plaintiff's request for review of the decision was denied by the Appeals Council on March 6, 2018. (Id.) The ALJ's decision dated May 18, 2018, became the Commissioner's final determination, and the instant lawsuit followed. (Dkt. No. 1)

Plaintiff was 55 years-old at the time of his hearing and possessed a GED. His past work included remodeling houses, carpentry, and framing. (Tr. 31, 213)

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] References to "Tr." are to the administrative record in this case. (Tr. 8)

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant

4

does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

5

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 10, 2010. (Tr. 16) At step two, the ALJ found that plaintiff had severe impairments consisting of diabetes mellitus; degenerative disc disease of the lumbar spine; Pickwickian Syndrome; venous reflux disease/venous stasis; obesity; and chronic obstructive pulmonary disease ("COPD").[3] (Tr. 16) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17) Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [S]ince June 10, 2010, the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[4] except the [plaintiff] can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ropes, ladders or scaffolds and should avoid concentrated exposure to extreme heat, extreme cold, humidity, dust, odors, fumes and pulmonary irritants.

(Tr. 17)

---

[3] Also at step two, the ALJ found that the record did not establish a diagnosis of diabetic arthritis and it was therefore not a medically determinable impairment. (Tr. 16)

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *See* 20 CFR §416.967(b).

6

Proceeding to step four, the ALJ found that plaintiff was unable to perform any past relevant work. (Tr. 19) At step five, the ALJ found that prior to January 20, 2017, plaintiff was able to perform other jobs that existed in the national economy, including housekeeper/cleaner, marker, and mail clerk. The ALJ concluded, then, that plaintiff was not disabled under the Act prior to January 2017. (Tr. 20-21)[5]

IV.   *Plaintiff's Challenges*

Plaintiff primarily challenges the ALJ's evaluation of the opinion evidence. Specifically, he claims that the ALJ "selectively picked and chose" portions of the consultative examiner's opinion, and that she failed to properly evaluate the opinion of plaintiff's treating physician. (Docket No. 9-1 [Pl. Mem.] at 20-30) The Commissioner, on the other hand, argues that the ALJ reasonably assessed the medical opinions of record and that the decision was supported by substantial evidence. (Dkt. No. 12-1 [Def. Mem.] at 9-14)

In evaluating the opinion evidence, the ALJ discussed the findings of consultative examiner Dr. Abrar Siddiqui, M.D., who examined plaintiff in September, 2014. (Tr. 18-19) During the consultation, plaintiff complained of diabetes, venous reflux disease, and arthritis. He took medication for his diabetes, but did not monitor his blood sugar or hemoglobin A1c levels. He was not treating with a physician for the venous problems in his legs. On examination, plaintiff walked with a normal gait, walked on heels and toes with some difficulty, and performed a squat to 20% of normal. His lumbar spine range of motion was restricted due to pain and obesity, and he exhibited bilateral venous statis dermatitis with 2+ pitting edema. Plaintiff had normal strength, sensation, and reflexes in

---

[5] The ALJ went on to determine that plaintiff became disabled on January 20, 2017. (Tr. 21)

7

the upper and lower extremities, and normal hand and finger dexterity and grip strength. X-rays could not be performed due to plaintiff's body habitus. (Tr. 18-19, 381-21)

Dr. Siddiqui opined that Plaintiff had mild-to-moderate limitations in the ability to sit, stand, climb, push, pull, or carry heavy objects. (Tr. 321) In affording this opinion significant weight, the ALJ explained that it was consistent with the record as a whole, which noted refusals of referrals and limited follow up, and because it was based on a personal examination of plaintiff by a provider with programmatic knowledge. (Tr. 19)

With respect to the RFC, the ALJ found that plaintiff could perform light work, with additional limitations in stooping, kneeling, crouching, crawling, and climbing ramps and stairs, and avoiding pulmonary irritants. (Tr. 17) It is true that an ALJ is not permitted to "cherry pick" information that supports the ALJ determination. *See Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted). Yet plaintiff fails to demonstrate how the assessed RFC is not fully consistent with Dr. Siddiqui's opinion as to mild-to-moderate limitations. Even if the opinion is to be read as assessing moderate limitations in these areas, it is nonetheless consistent with an RFC to do light work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."); *accord Carpenter v. Astrue*, 09-CV-0079, 2010 WL 2541222 at *5-*6 (W.D.N.Y. June 18, 2010) (ALJ's RFC finding of light work was consistent with consulting examiner's opinion that "plaintiff had only a moderate limitation in prolonged walking, standing, kneeling, and climbing."); *Revi v. Comm'r of Soc. Sec.*, 16 Civ. 8521, 2018 WL 1136997 at *30 (S.D.N.Y. Jan. 30, 2018),

*report and recommendation adopted*, 2018 WL 1135400 (S.D.N.Y. Feb. 28, 2018) (ALJ's RFC finding of light work was consistent with consulting examiner's opinion that "plaintiff had only moderate lifting and carrying limitations"); *Harris v. Comm'r of Soc. Sec.*, No. 09-CV-1112, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011), *report and recommendation adopted*, 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and reaching . . . consistent with the ALJ's conclusion that Plaintiff could perform light work")).

Plaintiff also argues that the ALJ should have afforded greater weight to the opinion of his treating physician, Dr. Frederick Elliott, M.D. (Dkt. No. 9-1 at 24)

Under the pertinent regulations in place at the time of plaintiff's application, the treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Commissioner is required to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. §404.1527(c)(2)). The reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, No. 15-cv-0643, 2016 WL 3514126, *6 (W.D.N.Y. June 28, 2016).

When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence

supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in a claimant's particular case. 20 C.F.R. §§ 404.1527(c), 416.927(c).

In March, 2015, Dr. Elliott completed a pulmonary residual functional capacity questionnaire, in which he stated plaintiff was diagnosed with COPD and diabetes. The physician opined that these impairments: (1) would interfere frequently with plaintiff's attention and concentration to perform simple work tasks; (2) plaintiff was capable of performing low-stress jobs; (3) he could walk one-half a block without rest, sit for 30 minutes, stand for 5 minutes, and sit/stand/walk for less than 2 hours in an 8-hour workday; (4) required unscheduled breaks every 1-2 hours to lie down or sit quietly; (5) could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 20 pounds or more; (6) could rarely climb stairs and never twist/stoop/crouch/squat/climb; (7) avoid moderate exposure to respiratory irritants; and (8) would be absent from work approximately 3 days per month. (Tr. 469-472) Dr. Elliott also completed an obesity residual functional capacity questionnaire and a diabetes residual functional capacity questionnaire (see Tr. 473-480), which assessed similar, extreme limitations preclusive of all work.

The ALJ afforded these opinions "little weight" because they were not consistent with the treatment record, which documented few findings upon examination. (Tr. 19) The ALJ further noted that, although Dr. Elliott stated that he had seen plaintiff for five years, "there are no actual examination notes from Dr. Elliott until 2017. Dr. Elliott's name

is listed as a primary physician on some imaging records, but no actual treatment notes or examinations are documented." (*Id.*)

The ALJ correctly applied the treating physician rule. Here, the most detailed clinical findings were from Dr. Siddiqui, which contradicted Dr. Elliott's opinion. (*See supra* at 7-8; Tr. 319-21) As these clinical findings did not support Dr. Elliott's assessed limitations, the ALJ reasonably rejected such opinions. See *Woodmancy v. Colvin*, 577 Fed. Appx. 72, 75 (2d Cir. Sept. 2, 2014) (ALJ properly assigned little weight to treating source's opinion when contradicted by clinical findings). She also correctly noted that Dr. Siddiqui's opinion was consistent with the balance of the record evidence. For example, the record suggests only mild issues with plaintiff's lower back. An x-ray of the lumbar spine in July 2012 showed vertebral body spurring at L1, L2, L3 and L4 and mild disc space narrowing at L5-S1. (Tr. 292) Plaintiff also exhibited venous insufficiency difficulties, but nothing that would restrict him from performing light work. A bilateral lower extremity ultrasound in July 2013 showed no evidence of DVT. (Tr. 273) A lower extremity venous duplex scan in November, 2014, showed interstitial edema in the calf and ankle bilaterally, but no deep vein thrombosis, pulsatile flow in the common femoral veins, and no deep or superficial venous reflux. (Tr. 426) Pulmonary function testing in January, 2015, revealed mild restriction and moderately severe obstruction with a favorable bronchodilator response. (Tr. 336) Plaintiff presented to Bertrand Chaffee Hospital in December, 2015, for shortness of breath. Chest x-rays and cardiac enzymes were normal, and a CT scan showed no pulmonary abnormality. (Tr. 342-43) The likely diagnosis was Pickwickian syndrome related to obesity. There was no evidence of an underlying acute illness, and he was encouraged to lose weight. (*Id.*) Thus, the ALJ

properly considered the opinion with the consistency with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

The ALJ also noted that that were no examination findings by Dr. Elliott to support the medical opinions, and plaintiff does not appear to claim that he saw Dr. Elliott at any time prior to 2017, the period during which plaintiff's alleged disability is disputed. (Tr. 19) Rather, Plaintiff acknolwedges that he was examined by Dr. Elliott twice—in February and March of 2017.[6] (Dkt. No. 9-1 at 26; Tr. 492, 498) The ALJ's observation was therefore in accordance with the treating source regulations. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Finally, the opinions rendered by Dr. Elliott were of a check-box type, so without any treatment records or clinical findings for support, the questionnaires had little probative value. *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Llorens–Feliciano v. Astrue*, No. 11-cv-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); *Wright v. Colvin*, No. 12-cv-0440, 2013 WL 3777187, at *15, (N.D.N.Y. July 17, 2013) ("lack of supporting detail and/or

---

[6] The treatment note from March, 2017, was signed by Dr. Thomas P. Smith, M.D., with a reference to Dr. Elliott as PCP. (Tr. 497)

objective findings provides a . . . reason for affording [an] opinion less weight"). "When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling . . . [a]nd the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *accord* 20 C.F.R. § 404.1527(c)(4).

Nor was the ALJ required to re-contact Dr. Elliott for further information, particularly considering the additional opinion and medical evidence in the record. *Ayers v. Astrue*, No. 08-CV-69, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009) ("where, as here, the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification. Only if the ALJ cannot determine whether a claimant is disabled based upon existing evidence does the duty to recontact arise."). Accordingly, the ALJ's consideration of Dr. Elliott's RFC assessments was proper and supported by the record.

## CONCLUSION

For the foregoing reasons, plaintiff Christopher Lefort's motion for judgment on the pleadings (Dkt. No. 9) is denied, and defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: August 19, 2019
Buffalo, New York

13

_____
MICHAEL J. ROEMER
United States Magistrate Judge